(No. 5329—

DOMINIKAS GIEDRAITIS AND ELENA GIEDRAITIS, his wife, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed April 17, 1969.*

GROMER, ABBOTT AND WITTENSTROM, Attorneys for Claimants.

WILLIAM G. CLARK, Attorney General; MORTON L. ZASLAVSKY AND ARTHUR L. BERMAN, Assistant Attorneys General, for Respondent.

PERLIN, C.J.

Claimants seek recovery of $7,125.00 for damages sustained on February 14, 1966, as the result of a fire started by an escaped inmate of the Elgin State Hospital.

The evidence reveals the following undisputed facts:

On February 14, 1966, the Elgin State Hospital had two patients under its supervision and control, named Michael Schmitz, age 14, and Larry Fisher, age 12 or 14. Both boys were housed in Halloran Cottage, which was a ward locked 24 hours a day, and held teenagers who were behavior problems. The doors of Halloran Cottage are unlocked by the ward attendant only if a patient has a "ground pass." Neither Michael Schmitz nor Larry Fisher had been granted a pass, and were not permitted to have keys to the outer doors in their possession. On the same date, one Ruth Bordsen was employed by the Elgin State Hospital as a psychologist and ward program coordinator, and was working in the Halloran Cottage as a ward program coordinator. Mrs. Bordsen testified that from his record she had personal knowledge that Larry Fisher had a history of setting fires. She further stated that she carried the key to Halloran Cottage on her key ring; that Halloran Cottage is locked 24 hours per day, and none of the rules allowed any inmates of that Cottage to have keys. Mrs. Bordsen further testified that, during a party for the inmates on February 14, 1966, she left her keys on a table in front of her, and Michael Schmitz removed the key to Halloran Cottage. After Michael Schmitz had secured the key to the outer doors of the building from Mrs. Bordsen's key ring, he unlocked the west and south ward

doors of the Halloran Cottage. Patient Fisher hid under a bed when the rest of the patients went to the party, and, after Michael Schmitz unlocked the outside ward door, Fisher exited from the Halloran Cottage between 8:30 and 9:00 P.M. Fisher went directly to claimants' building where he stuffed paper and cardboard in a hole in the building, and lighted this matter with a match. He then returned to the ward.

Respondent does not question the facts as set forth above, and specifically "does not contest the question of liability in this cause," but raises objection to the claim as follows:

(1) Claimants' wilful breach and violation of Rule 5 of the Court of Claims justifies dismissal of their complaint, and denial of their claim.

(2) Claimants have failed to sustain their burden of proof in relation to the damages incurred.

In support of its first objection to the claim, respondent contends that the original complaint as sworn to by Dr. Dominikas Giedraitis was for the amount of $16,478.11, representing $5,478.11 of personal property and $11,000.00 for the building. Respondent further contends that claimant stated upon oath that "he and his wife, Elena Giedraitis, are owners of the claim; that no assignment or transfer of the claim or any part thereof, or interest therein, have been made; that claimants are justly entitled to the amount claimed in the foregoing complaint from the State of Illinois, or the appropriate State Agency, after allowing all just credits; and, that this claim, or any claim arising out of the same occurrence has not been previously presented by claimants herein to any person, corporation, or tribunal, other than

the State of Illinois.'' The complaint was filed in the Court of Claims on July 25, 1966.

Respondent also sets forth Rule 6 of the Court of Claims, which provides as follows:

"If the claimant shall, subsequent to the filing of his complaint in the Court of Claims, commence a proceeding in another tribunal, or present a claim to any other person or corporation for damages arising out of the same occurrence or transaction, then, in that event, the claimant shall immediately advise the Court of Claims in writing as to when, where and to whom such claim was presented or proceeding commenced. The complaint then pending in the Court of Claims will be continued generally until the final disposition of said claim or proceeding. Failure of claimant to notify the Court of Claims, as provided herein, shall be ground for dismissal of the complaint."

Respondent contends that claimants have violated Rule 5 and Rule 6 of the Court by having sworn to a complaint, which was filed on July 25, 1966, that they owned the claim, that no assignment or transfer of the claim or a part thereof had been made, and, that no claim arising out of this occurrence had been previously presented to any person, corporation or tribunal other than the State of Illinois. Because Dr. Giedraitis testified at the hearing that he had settled a claim for damage to the building and a claim for damage to personal property with the Royal Exchange Assurance Company in the amount of $5,000.00 on the building and $3,337.35 for the personal property in June, 1966, respondent alleges that claimant falsely swore to the affidavit attached to the complaint, and that the cause should, therefore, be dismissed.

The evidence shows that at the opening of the hearing in the instant case, the attorneys for claimants set forth the facts of the insurance claim as follows:

"MR. WITTENSTROM: Rule 6 of the Rules of the Court of Claims provides that, if claimant shall subsequent to the filing of his complaint present a claim to any other person or corporation for dam-

ages arising out of the same occurrence, then in that event the claimant shall immediately advise the Court of Claims in writing as to when, where and to whom such claim was presented.

"Now I have, subsequent to the filing of the complaint, discovered that claimants have presented claims, and I ask permission at this time to file a letter setting forth the facts required by Rule 6.

"(Whereupon document is marked claimants' exhibit No. 5 by the Reporter.)

"MR. WITTENSTROM: Any objection?

"MR. ZASLAVSKY: No objection.

"THE COURT: Let the record show that claimants' exhibit No. 5 is admitted into evidence without objection."

Claimants' exhibit No. 5 is a letter from Mr. Wittenstrom to Mr. Routman, dated March 8, 1967, which states as follows:

"Pursuant to Rule 6 of the Rules of the Court of Claims of the State of Illinois, this is to advise the Court of Claims in writing that claimants have presented a claim to the Royal Exchange Assurance Company, 309 West Jackson Blvd., Chicago, Illinois, for damages arising out of the same occurrence or transaction. Such claim has been finally disposed of, and such company has paid claimants $8,337.35."

Dr. Giedraitis testified that a Royal Exchange Home Owner's Policy, admitted into evidence without objection, was in force on his property at the time of the fire. He further testified that this policy insured his dwelling for $25,000.00, appurtenant private structures for $5,000.00, and unscheduled personal property for $10,000.00.

Dr. Giedraitis stated that the property destroyed was a combination barn, garage and summer house, which was just repaired, and items of personal property located within the structure of the building. Dr. Giedraitis testified that he notified the insurance company of the fire, and was paid $5,000.00 for the building, which was the total loss allowed under the policy, and $3,337.35 for the items of personal property.

It appears that the insurance company settled the claim in June, 1966. Dr. Giedraitis stated that he had not notified his lawyers that he had received a check, because he had not talked to them. Nowhere in cross-examination or elsewhere is there evidence to conclude that claimant wilfully, maliciously, or intentionally tried to mislead the Court by stating that the claim had not been submitted elsewhere, as charged in the brief of respondent. In fact, at the very start of the hearing, one of claimants' attorneys called the insurance settlement to the attention of the Court, and introduced the letter explaining the settlement, and later, the insurance policy, without objection from respondent.

The next question to be decided is the amount of damage incurred by claimants in the burning of their building and personal property. Respondent contends that claimants have failed to sustain their burden of proof in relation to the damages incurred.

Real property consisting of a combination barn, garage, and summer house were insured for $5,000.00, which amount was received in full. Claimants contend that the total value of the real property destroyed was $11,000.00. Dr. Giedraitis testified that the summer house was attached to the garage. The barn was made of shingles over. wood, and had an electric garage door.

Claimants called two witnesses to testify as to the market value of the building when it was burned. Clarence Dietrich, a general contractor, testified that he rebuilt part of the building after the fire for $10,400.00, but did not rebuild the summer house. He stated that in his opinion the market value of the building was between $10,000.00 and $11,000.00 on February 14, 1966 before the fire.

Edwin Haas, a building contractor, who remodeled the structure before the fire, testified that the market value of the structure before the fire on February 14, 1966 was at least $10,000. Respondent presented no testimony on the question of the value of the real property.

Dr. Giedraitis testified that he accepted the sum of $3,337.35 from the insurance company for personal property, but that did not include payment for an eighteen foot boat, two motors and a trailer. Claimant testified that he was paid about $500.00 for these items in the insurance settlement. Claimant stated that he brought the boat second hand, and paid the seller $500.00, and the promise of medical services, but he does not know exactly how much service he has since rendered the seller.

Claimants produced no other witness to testify as to the value of the boat, motors and trailer, and Dr. Giedraitis did not establish himself as an expert in this field. This Court has held that it is fundamental that the burden of proving the element of damages is upon claimants. "The proof required to establish damages must not be remote, speculative, nor uncertain." *Frega* vs. *State of Illinois*, 22 C.C.R. 399, 400. Claimants have not sustained their burden of proof with regard to the value of the boat, motors and trailer.

It appears that the market value of the building was $10,000.00 immediately before the fire destroyed it. Claimants were paid $5,000.00 in insurance. According to the evidence, the foundation of the building remained. Therefore, claimants are awarded the sum of $4,000.00.